UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. _____14_____ -CIV __7129__

PERMISSION DATA, LLC,

      Plaintiff,

v.

NEWSMAX MEDIA, INC.,

      Defendant.

_____/

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441(b) and 1446, defendant, Newsmax Media, Inc. ("Newsmax"), through counsel, hereby removes the above-captioned action ("Action") from the Supreme Court of the State of New York in and for New York County, New York, where the Action is currently pending, to the United States District Court for the Southern District of New York. Newsmax's appearance is expressly limited for the sole purpose of removal, and it expressly reserves all available defenses and rights.

In accordance with 28 U.S.C. § 1446(a), true and complete copies of the record in this Action, the Summons and the Complaint, together with exhibits, are respectively attached hereto as **Exhibit 1** and **2**. No other pleadings have been filed in this action. The removal of this action is predicated upon the following:

### Procedural History and Background

1.     On or about August 4, 2014, Permission Data, LLC ("Permission Data") filed a four-count complaint against in Newsmax, captioned *Permission Data, LLC v. Newsmax Media, Inc.,* Index No. 157622/14 in the Supreme Court of the State of New York in and for New York County, New York ("Complaint").

2.      Permission Data's Complaint alleges that it is owed $274,401.50 in connection with its alleged rendition of online marketing services to Newsmax. Permission Data's Complaint purports to state causes of action for breach of contract, account stated, quantum meruit and unjust enrichment.

3.      On or about August 6, 2014, service was effectuated upon Newsmax by serving Brian Todd, its Chief Operations Officer in West Palm Beach, Florida. Thus, the first date upon which Newsmax had notice of the Action was August 6, 2014.

4.      Newsmax's time to respond to the Complaint has not expired, and this notice is being filed within thirty (30) days of service of the Complaint and within one year of the commencement of this action. Accordingly, this notice of removal is timely filed pursuant to 28 U.S.C. § 1446(b).

5.      Permission Data is a limited liability company organized under the laws of the State of New York with its principal place of business located at 451 Park Avenue South, New York, New York 10016.

6.      Newsmax is a corporation organized under the laws of the State of Delaware with its principal place of business located at 560 Village Boulevard, West Palm Beach, Florida 33409.

7.      No motions or other proceedings in this Action are pending before the state court.

8.      Newsmax files herewith the Civil Cover Sheet and has made payment of the required filing fee. No previous application for the relief sought through this Notice has been made to this or any other court.

9.      Upon the filing of this Notice of Removal, written notice of the filing will be given to Permission Data's legal counsel, as provided by law, and copies of this Notice will be

filed with the Clerk of the Supreme Court of the State of New York in and for New York County, New York, pursuant to 28 U.S.C. § 1446.

10.     Venue for removal purposes is proper in this District under 28 U.S.C. § 1441 because this District encompasses the New York County Court,

## Grounds for Removal

Removal of a state court proceeding to federal court is provided for under 28 U.S.C. § 1441(a), which provides, in pertinent part:

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Pursuant to 28 U.S.C. § 1332(a), district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value $75,000.00, exclusive of interests and costs, and is between," completely diverse parties. *See Carden v. Arkoma Assocs.,* 494 U.S. 185, 187 (1990); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978) (holding that for a party to invoke diversity under 28 U.S.C. § 1332, the moving party must establish: (1) that the plaintiff and defendant are citizens of different states, and (2) that there is a reasonable probability that the claim exceeds the sum or value of $75,000.00). *See also, Universal Licensing Corp. v. Paola del Lungo S.p.A.,* 293 F.3d 579, 580-81 (2d Cir. 2002) (same).

In the instant case, the two requirements for diversity jurisdiction are easily met.

## A.     The Complete Diversity Requirement is Satisfied.

There is no dispute that complete diversity exists. In fact, as pled in Permission Data's Complaint, "Permission Data is a limited liability company organized under the laws of the State of New York with its principal place of business located at 451 Park Avenue South, New York,

New York 10016." (*See* Complaint, ¶ 3). Newsmax, on the other hand, is a "corporation organized under the laws of the State of Delaware with its principal place of business located at 560 Village Boulevard, West Palm Beach, Florida 33409." (*Id.* at ¶ 4). *See Yonkosky v. Hicks*, 409 F. Supp.2d 149, 154 (W.D.N.Y. 2005) ("Whether an action is removable based on diversity jurisdiction is determined upon the pleadings are originally filed.").

Given that Permission Data, a New York limited liability company, and Newsmax, a Delaware corporation, are the only parties to this action and are citizen of different states with their respective principal places of business in different states, the complete diversity requirement is satisfied.

## B.     The Amount in Controversy Exceeds the Minimum Requirement for Federal Court Jurisdiction.

The amount in controversy requirement is also easily met. While Newsmax denies any and all liability to Permission Data, the alleged amount in controversy exceeds $75,000.00, exclusive of interest and costs. Permission Data's Complaint explicitly demands $274,401.50 based on a series of alleged unpaid invoices. *See Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) (holding that in determining whether the amount in controversy requirement has been satisfied, courts "look first to the [plaintiff's] complaint and then to [the defendant's] petition for removal."); *Kheel v. Port of New York Authority*, 457 F.2d 46, 49 (2d Cir. 1972) ("the amount in controversy is calculated from the plaintiff's standpoint."). *See also, Scherer v. Equitable Life Assurance Society of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) ("[there is] a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy") (internal quotation and citation omitted).

Consequently, the second requirement for diversity jurisdiction has been established.

**C.**     **Newsmax Has Complied With All Removal Procedures**.

This Notice of Removal is timely under 28 U.S.C. § 1446(b), as it is filed within thirty (30) days of Newsmax's receipt, through service, of Permission Data's Complaint on August 6, 2014, as well as within one year of the commencement of the action. *See* 28 U.S.C. § 1446(b). Further, as referenced above, Newsmax has given written notice of the filing of this notice as required by 28 U.S.C. § 1446(d) by simultaneously filing a Notice of Filing Notice of Removal with the clerk of the Supreme Court of the State of New York in and for New York County, New York, as well as to Permission Data's legal counsel.  Lastly, venue for removal purposes is proper in this District under 28 U.S.C. § 1441(a) because this District embraces the Supreme Court of the State of New York in and for New York County, New York, the forum in which the removed Action was pending.

Newsmax reserves all rights, including but not limited to defenses and objections as to the sufficiency of service, and the filing of this Notice of Removal is subject to, and without waiver of, any such defenses and objections.

**WHEREFORE**,   defendant, Newsmax Media, Inc., respectfully provides Notice of Removal and prays that the Action now pending in the Supreme Court of the State of New York, County of New York, be removed and proceed in its entirety before the United States District Court for the Southern District of New York.

Dated: September __4__, 2014
        New York, New York


                                        Respectfully submitted,

                                        **STROOCK & STROOCK & LAVAN LLP**
                                        *Attorneys for Newsmax Media, Inc.*
                                        180 Maiden Lane
                                        New York, New York 10038
                                        Telephone: (212) 806-5400

– and –

Southeast Financial Center
200 South Biscayne Blvd., Suite 3100
Miami, Florida  33131
Telephone: (305) 358-9900
Facsimile: (305) 416-2888
jsammataro@stroock.com


By: _____
    James G. Sammataro
    New York Bar Number: 4937926

Permission Data, LLC vs.
Newsmax Media, Inc.

# Exhibit 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

PERMISSION DATA, LLC,

                    Plaintiff,

        -against-

NEWSMAX MEDIA, INC.,

                   Defendant.

---

Index No. 157622/14

COMPLAINT

      Plaintiff Permission Data, LLC ("Permission Data"), by its attorneys, Greenberg Freeman LLP, for its complaint against Newsmax Media, Inc. ("Newsmax"), alleges upon knowledge with respect to its own acts and upon information and belief as to all other matters, as follows:

Nature of the Action

      1. This action concerns Newsmax' failure to honor its obligation to pay for services provided to it by Permission Data. As set forth below, Newsmax entered into an agreement with Permission Data pursuant to which Permission Data provided marketing services to Newsmax. During the relevant time period, Newsmax never expressed any dissatisfaction with the services provided by Permission Data; Newsmax never disputed that it is indebted to Permission Data in the amount of $274,401.50; and Newsmax never objected to any invoice provided by Permission Data. Despite the foregoing, Newsmax refuses to honor its obligation to pay Permission Data for services rendered.

      2. Accordingly, Permission Data brings this action for breach of contract, account stated, quantum meruit and unjust enrichment. Permission Data seeks

recovery of compensatory damages in an amount not less than $274,401.50, together with interest thereon and the costs, attorneys' fees and disbursements of this action.

Parties

3.  Permission Data is a limited liability company organized under the laws of the State of New York with its principal place of business located at 451 Park Avenue South, New York, New York 10016. Permission Data is a marketing company.

4.  Newsmax is a corporation organized under the laws of the State of Delaware with its principal place of business located at 560 Village Boulevard, West Palm Beach, Florida 33409.

5.  Newsmax has consented in writing to personal jurisdiction in the State of New York.

Facts

6.  In December of 2013 and thereafter, Permission Data entered into a written agreement and insertion orders with Newsmax pursuant to which Permission Data agreed to provide certain marketing services to Newsmax (the "Marketing Services") and Newsmax agreed to pay Permission Data in accordance with the terms and conditions contained in the written agreement and insertion orders (individually and collectively, the "Agreement"). A copy of the Agreement is annexed to this complaint as Exhibit A and its terms are incorporated herein by reference.

2

7. From in or around December of 2013 through in or around July of 2014, Permission Data, at Newsmax' special instance and request, provided the Marketing Services to Newsmax in accordance with the Agreement as set forth in the invoices listed below, which are hereby incorporated by reference (the "Invoices"):

| INVOICE NUMBER | INVOICE DATE | AMOUNT DUE |
|---|---|---|
| 17138 | 02/28/2014 | $13,762.50 |
| 17156 | 03/31/2014 | $207,082.50 |
| 17284 | 04/30/2014 | $290,133.00 |
| 17287 | 04/30/2014 | $12,633.00 |
| 17285 | 04/30/2014 | $10,785.00 |
| 17286 | 04/30/2014 | $252.00 |
| 17403 | 05/31/2014 | $307,014.00 |
| 17401 | 05/31/2014 | $226,126.25 |
| 17402 | 05/31/2014 | $42,480.00 |
| 17404 | 05/31/2014 | $39,603.00 |
| 17631 | 06/30/2014 | $67,733.75 |
| 17633 | 06/30/2014 | $43,047.00 |
| 17632 | 06/30/2014 | $24,727.50 |

Total:    $1,285,379.50

8. Although Newsmax has paid some of the Invoices, Newsmax has failed to pay Permission Data $274,401.50 which remains due and outstanding despite due demand for payment by Permission Data.

9. During the relevant time period, Newsmax has never disputed or objected to the Invoices, the amounts shown due in the Invoices or the Marketing Services provided to Newsmax by Permission Data pursuant to the Agreement.

10. Indeed, pursuant to the Agreement, Newsmax has ten business days after an invoice is rendered to dispute the invoice. In the event Newsmax fails to

3

dispute an invoice within ten business days, the invoice is deemed to be final and binding.

11. None of the Invoices were disputed by Newsmax within the time permitted by the Agreement. Indeed, Newsmax did not dispute any Invoice or the Marketing Services until long after Permission Data's relationship with Newsmax ended and Permission Data pressed Newsmax to pay the outstanding balance.

First Cause of Action
(breach of contract)

12. Permission Data repeats and realleges the allegations contained in paragraph 1 through 11 herein.

13. Pursuant to the Agreement, Newsmax agreed to pay Permission Data for the Marketing Services provided by Permission Data to Newsmax at the rates set forth in the Agreement and reflected in the Invoices.

14. Permission Data has provided the Marketing Services to Newsmax and has duly performed all of the terms and conditions of the Agreement on its part to be performed.

15. Newsmax has failed and refused to make payments to Permission Data in accordance with the Agreement, despite Permission Data's due demand therefore. Newsmax has due and owing to Permission Data the sum of $274,401.50, together with interest thereon.

16. By reason of the foregoing, Newsmax has breached the Agreement.

17. By reason of the foregoing, Permission Data has been damaged in an amount to be determined at trial but in no event less than $274,401.50.

4

### Second Cause of Action
(account stated)

18. Permission Data repeats and realleges the allegations contained in paragraphs 1 through 17 herein.

19. Permission Data provided the Marketing Services to Newsmax for which Permission Data delivered Invoices to Newsmax demanding payment for the Marketing Services.

20. The Invoices constitute a just and true account of the Marketing Services provided by Permission Data to Newsmax. The Invoices were accepted by Newsmax without objection being made thereto or any item thereof.

21. As a result of the foregoing, an account was stated between Permission Data and Newsmax which showed $1,285,379.50 to be due and owing by Newsmax to Permission Data, of which $274,401.50 has not been paid although duly demanded.

22. By reason of the foregoing, Permission Data has been damaged in an amount to be determined at trial but in no event less than $274,401.50.

### Third Cause of Action
(quantum meruit)

23. Permission Data repeats and realleges the allegations contained in paragraphs 1 through 22 herein.

24. Permission Data provided the Marketing Services to Newsmax at Newsmax' request and Newsmax accepted the Marketing Services, and the benefits of the Marketing Services, with the knowledge and understanding that Permission Data expected to be paid for the Marketing Services.

25.  Although the fair and reasonable value to Newsmax of the Marketing Services provided by Permission Data is not less than the sum of $1,285,379.50, for which due demand has been made, Newsmax has failed to pay Permission Data $274,401.50 which remains outstanding, due and owing to Permission Data.

26.  By reason of the foregoing, Permission Data has suffered damages in an amount to be determined at trial but in no event less than $274,401.50.

Fourth Cause of Action
(unjust enrichment)

27.  Permission Data repeats and realleges the allegations contained in paragraphs 1 through 26 herein.

28.  Permission Data provided the Marketing Services to Newsmax and Newsmax accepted the Marketing Services while knowing that Permission Data expected to be compensated for the Marketing Services.

29.  Newsmax accepted the Marketing Services provided by Permission Data and Newsmax has been unjustly enriched by receiving the benefits thereof without paying for same.

30.  By reason of the foregoing, Permission Data has suffered damages in an amount to be determined at trial but in no event less than $274,401.50.

Fifth Cause of Action
(attorneys' fees)

31.  Permission Data repeats and realleges the allegations contained in paragraphs 1 through 30 herein.

6

32. Pursuant to the Agreement, Newsmax is obligated to pay to Permission Data all reasonable attorneys' fees and other costs incurred by Permission Data to enforce its rights under the Agreement and collect all amounts due to Permission Data pursuant to the Agreement.

33. Permission Data has incurred and will continue to incur attorneys' fees and other costs enforcing its rights under the Agreement and collecting amounts due to Permission Data pursuant to the Agreement.

34. By reason of the foregoing, Permission Data has been damaged in an amount to be determined at trial but in no event less than $25,000.00

WHEREFORE, Permission Data demands judgment against Newsmax:

a. On the first cause of action in an amount to be determined at trial but in no event less than $274,401.50;

b. On the second cause of action in an amount to be determined at trial but in no event less than $274,401.50;

c. On the third cause of action in an amount to be determined at trial but in no event less than $274,401.50;

d. On the fourth cause of action in an amount to be determined at trial but in no event less than $274,401.50;

e. On the fifth cause of action in an amount to be determined at trial but in no event less than $25,000.00;

f. Together with interest, costs, attorneys' fees and disbursements

and such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        August 4, 2014

                        GREENBERG FREEMAN LLP


                  By:  s/ Sanford H. Greenberg
                       Sanford H. Greenberg
                       110 East 59th Street
                       22nd Floor
                       New York, New York 10022
                       (212) 838-9738

                       Attorneys for Plaintiff
                       Permission Data, LLC

EXHIBIT A



### TERMS AND CONDITIONS

These Terms and Conditions ("Terms and Conditions") entered into on this the _18_ day of _____December___, 20_13_, shall govern the relationship between Permission Data, LLC, a New York State limited liability corporation ("Permission Data"), and _____Newzmy_, a __FL__ corporation ("Advertiser") as listed in the IO (as defined below), in connection with the advertising and marketing services ("Services") provided to Advertiser by Permission Data and its third party publisher partners ("Partners") as applicable. The Services are further described in the Insertion Order ("IO") to which these Terms and Conditions are attached and which is incorporated herein by reference (the IO, together with these Terms and Conditions, the "Agreement"). This Agreement shall be deemed incorporated by reference into any IO submitted by the Advertiser or its agency and shall govern the IO, superseding all terms therein except for those relating to advertisement scheduling and pricing. The terms of any Permission Data issued IO shall supersede all contrary terms set forth in these Terms and Conditions, unless expressly set forth to the contrary. In any instance where Advertiser is an agency entering into the Agreement on behalf of a client ("Client"), any reference to "Advertiser" shall refer jointly to Advertiser and the applicable underlying Client.

1. **Services.** Advertiser agrees to accept and pay for, and Permission Data agrees to provide, the Services. In connection with the Services, Permission Data shall undertake marketing campaigns for Advertiser (each a "Campaign"), whereby Permission Data and its Partners will distribute Advertiser's proprietary advertising materials including, without limitation, online display ads, text-links, publisher hosted registrations, advertiser hosted registrations, e-mails, graphic files and similar online media. In connection with such Campaigns, Advertiser shall pay Permission Data depending on the number of valid clicks ("CPC"), impressions ("CPM"), sales/actions ("CPA"), applications, leads ("Leads") or such other compensable transaction generated on behalf of Advertiser as set forth in the subject IO ("Compensable Actions"). The fees due to Permission Data for each Compensable Action and other applicable terms and conditions of the Campaigns entered into hereunder shall be specified in each IO.

2. **Leads.** In connection with Leads-based Campaigns, the IO shall specify either a "Publisher Hosted" and/or "Advertiser Hosted" Lead form.

(a) _Advertiser Hosted Leads._ Where the Campaign calls for an Advertiser Hosted form, Advertiser agrees to provide Permission Data with access to real time online reporting on Compensable Actions generated on the Advertiser Hosted form and allow Permission Data to place a pixel ("Pixel") on the mutually agreed upon page within Advertiser's website. In the event that no online tracking is available for Permission Data's use, then Advertiser agrees to provide Permission Data with statistics regarding the Compensable Actions generated each business day by 10:00 AM EST the day after such Compensable Actions occurred. Advertiser will not knowingly move, modify, disable or otherwise interfere with the Pixel without Permission Data's prior written consent. Advertiser pixel reporting is considered final upon receipt from the Advertiser. No modifications or corrections may be made by the Advertiser to reporting after it has been received by Permission Data for any reason including but not limited to Advertiser error.

(b) _Publisher Hosted Leads._ Where the Campaign calls for Publisher Hosted forms, Permission Data shall provide Advertiser with daily reports, excluding weekends and national holidays, providing Compensable Actions generated on the Publisher Hosted forms as recorded by Permission Data. At Permission Data's discretion, all Publisher Hosted forms shall have the following language, or such similar language above the "submit" button or variation thereof: "Completion of this offer is optional and not associated with any other promotion. By clicking SUBMIT you agree to be contacted by this advertiser."

(c) _General Terms._ Advertiser will pay Permission Data for all Leads generated as recorded by the Pixel for Advertiser Hosted Campaigns, or Permission Data's reporting for Publisher Hosted Campaigns; provided, however, that Advertiser shall have no obligation to pay for any Lead that it rejects within the terms outlined in the Unaccepted Leads section of these Terms and Conditions where, upon review of returned Leads, Permission Data subsequently determines, in its reasonable discretion, that such Lead is not a Valid Lead. If rejected Leads are not received by Permission Data within the terms outlined in the Insertion Order, or where Permission Data determines that such rejected Lead is a Valid Lead, those Leads shall be considered Valid Leads and Advertiser must pay for same. For purposes of the Agreement, a "Valid Lead" means an individual person that: (i) has submitted information that meets all of Advertiser's criteria as set forth in the applicable IO; and (ii) is not a Duplicate Lead. For purposes of the Agreement, a "Duplicate Lead" means a Lead submitted by Permission Data to Advertiser that reproduces all or substantially all of the uniquely identifying data of any Lead that was either previously submitted to Advertiser by Permission Data, and for which Advertiser has paid, or accrued an obligation to pay Permission Data, or already exists in Advertiser's database from a different source. Notwithstanding the foregoing, the maximum percentage of non-Valid Leads, Duplicate Leads or otherwise rejected Leads cannot exceed the percentage set forth in the IO in any given billing cycle and Advertiser will be billed accordingly. In accordance with the terms set forth in the applicable IO, Advertiser shall provide Permission Data with a report containing all Leads (by email address) that were received and rejected by Advertiser and the reason for rejection. Unless otherwise designated as the applicable

Compensable Action, Leads provided to Advertiser hereunder shall have no obligation to purchase and/or subscribe to any product and/or service offered by Advertiser, and failure to enter into any such transaction shall not affect Advertiser's obligation to compensate Permission Data for such Leads as set forth hereinabove.

3. **Unaccepted Leads.** Where Advertiser does not accept Leads, where Advertiser fails to make payments for Leads in accordance with the payment terms herein and in the applicable IO and/or where such Leads are later determined not to be Valid Leads, Advertiser shall have no rights in and to such Leads, and such Leads shall be considered the Confidential Information of Permission Data, subject to any and all restrictions set forth herein ("Unaccepted Leads"). Without limiting the generality of the confidentiality obligations set forth herein, Advertiser agrees that it: (i) will not transfer, export, display, forward or otherwise share information contained in the Unaccepted Leads to/with any third party; (ii) will not use any of the data to append to existing data or use the information contained in the Unaccepted Leads on its own behalf in any manner not expressly authorized by Permission Data; and (iii) will notify Permission Data as soon as it learns of any actual or suspected unauthorized use of or access to the information contained in the Unaccepted Leads and provide reasonable assistance to Permission Data in the investigation and prosecution of any such unauthorized use or disclosure.

4. **CPA/CPC/CPM/Leads Campaigns.** Unless otherwise stated herein or in writing by Permission Data, each piece of Advertising Material used by Permission Data in connection with CPA, CPC and CPM Campaigns will include, in unaltered form, the special transaction tracking codes provided by Permission Data to Advertiser ("Transaction Tracking Codes"). Advertiser will not knowingly modify, circumvent, impair, disable or otherwise interfere with any Transaction Tracking Codes and/or other technology and/or methodology required or made available by Permission Data to be used in connection with any and all CPA, CPC and CPM Campaign Advertising Material. In connection with CPA, CPC, CPM-based and Leads-based Campaigns, in instances where Compensable Action data cannot be supplied due to a failure of the Transaction Tracking Codes caused by Advertiser, as well as Advertiser's inability to provide such information, in the alternative Advertiser will pay for all Compensable Actions that would have been generated during such time. Calculation of Compensable Actions will be determined by the amount of traffic sent to Advertiser's site and shall be equal to the highest "click to conversion" rate during any 24 hour period during the Campaign, or if such is unavailable, then a reasonable "click to conversion" rate as determined by Company in its sole discretion will be determined. In the event of unscheduled downtime, Company reserves the right, in its sole discretion, to redirect of traffic away from Advertiser's website during any period in which it is not available and for such other period of time deemed advised and appropriate by Company.

5. **Advertising Material.** Advertiser shall develop all aspects of the Advertiser Creative, other than where the parties agree that Permission Data shall assist in the development of advertising materials to be used hereunder ("Advertising Material"). Advertiser must notify Permission Data at least ten (10) days in advance of any scheduled downtime of the Advertising Material. Advertiser shall not alter, modify or otherwise change the Advertising Material, or any other Advertising Material-related feature, including landing pages, data fields to be collected, or micro sites on which Compensable Actions could take place, in any manner whatsoever, without Permission Data's prior express written consent, after the applicable Advertising Material has been approved by Permission Data. Should Advertising Material be unavailable or changed for any reason other than properly scheduled downtime, Advertiser will pay for all Compensable Actions that would have been generated during such time. Calculation of Compensable Actions will be determined by the amount of traffic sent to Advertiser's site and shall be equal to the highest "click to conversion" rate during any 24 hour period during the Campaign, or if such is unavailable, then a reasonable "click to conversion" rate as determined by Company in its sole discretion will be determined. Notwithstanding the foregoing, Permission Data shall have discretion with respect to the creation of the "subject" and "from" lines used in the e-mailing of any Advertising Material. Permission Data reserves the right and without liability, to: (a) change any of its Advertising Material specifications at any time; and (b) to reject, exclude or terminate any Advertising Material for any reason at any time, whether or not such Advertising Material was previously acknowledged, accepted or published by Permission Data.

6. **Placement.** The positioning, placement and frequency decisions related to Advertising Material shall be made by Permission Data and/or its Partners, as applicable. Advertiser agrees that Campaigns will be placed "Run of Network" unless placement or distributions are set forth in the applicable IO. "Run of Network" indicates the Advertising Material may appear at any point of placement and/or distribution that Permission Data and/or its Partners may determine. Permission Data may add new Partners to its network from time to time in Permission Data's sole discretion. Where Advertiser objects to Permission Data's use of a Partner in a Campaign, Permission Data shall cease using such Partner within two (2) business days of Advertiser's written notice thereof. Without limiting the foregoing, Permission Data may set up websites, micro sites and other venues within which to display the Advertising Materials.

7. **E-mail Marketing.** The following terms apply to all e-mail Campaigns transmitted by Permission Data on behalf of Advertiser. Any and all e-mail based Advertising Material: (a) shall comply with all laws relating to e-mail marketing including, but not limited to, the CAN-SPAM Act of 2003, as amended ("CAN-SPAM"); (b) must not infringe, misappropriate or otherwise violate any copyright, patent, trademark, trade secret or other similar intellectual property right, or otherwise violate or breach any duty toward, or rights of, any person or entity including, without limitation, rights of privacy and publicity; and (c) must not result in any consumer fraud, product liability or

breach of contract to which Advertiser is a party or cause injury to any third party. Advertiser shall cause a valid physical postal address for Advertiser to appear in each e-mail containing Advertising Material, along with a functioning unsubscribe link (such unsubscribe link must remain active for at least thirty (30) days after e-mail delivery). Permission Data will make available, a designated FTP site ("FTP Site"). Advertiser shall upload its own list of suppressed e-mail addresses to the FTP Site, or send its suppressed e-mail addresses to Permission Data via e-mail no less than weekly. If no such suppressed e-mail addresses are supplied by Advertiser, Permission Data may conclude that no such addresses exist. Advertiser agrees to process any unsubscribe requests within the timeframe mandated by CAN-SPAM. If Advertiser cancels or delays an email deployment, for whatever reason, within forty-eight (48) hours of scheduled deployment, Advertiser will be charged a cancellation fee of the lesser of Five Thousand Dollars ($5,000.00) or fifty percent (50%) of the amount allocated for the applicable e-mail deployment.

**8. Fees.** The rates for Compensable Transactions shall be set forth in the applicable IO(s). Permission Data will invoice Advertiser monthly, and unless otherwise set forth in the applicable IO, payment will be due to Permission Data within thirty (30) days of the end of the month in which the Compensable Actions were generated. Payment shall be due from Advertiser in accordance with this paragraph notwithstanding any failure or inability of advertiser to collect payment from its customer. Advertiser shall have ten (10) business days from its receipt of an invoice to notify Permission Data of any dispute relating to such invoice. If Advertiser fails to notify Permission Data within such ten (10) business day period, such invoice shall then be deemed final and binding. Payment shall be due from Advertiser in accordance with this paragraph notwithstanding any failure or inability of Advertiser to collect payment from its Client(s), if any. If payment is not made in a timely manner, Permission Data may, at its option, immediately suspend and/or terminate the Agreement and/or any applicable IO and Advertiser shall upon written notice by Permission Data cease and desist from any further use of any Registrations or other information acquired under this Agreement for which payment has not been made. Interest will accrue on any past due amounts at the rate equal to the lesser of one and one half percent (1.5%) per month or the maximum amount permitted by law. In addition, Advertiser shall be liable to Permission Data for all attorneys' fees and other costs of collection incurred in collecting such unpaid amounts. Advertiser agrees and acknowledges that it shall be fully responsible for any and all taxes, whether state or local, and related fees, costs and penalties incurred by Permission Data and/or any of its Affiliates pursuant to Chapter 57 of the Laws of 2008 amending the New York State Tax Law.

**9. Term/Termination.** Either party may terminate the Agreement, and/or any underlying Insertion Order, for any reason by providing the other party with five (5) business days' prior written notice thereof. Either party may terminate the Agreement, and/or any underlying Insertion Order, immediately in the event of a material breach of the Agreement by the other party by providing written notice of such termination to the breaching party. Notwithstanding the foregoing, Advertiser's obligation to pay for the Services rendered prior to termination shall not be terminated until such payment is made, and any provisions of the Agreement that may reasonably be expected to survive termination of the Agreement, shall survive and remain in effect in accordance with their terms.

**10. Warranty/Limitation of Liability.** THE SERVICES, COMPENSABLE TRANSACTIONS, PIXELS AND TRANSACTION TRACKING CODES PROVIDED BY PERMISSION DATA UNDER THE AGREEMENT AND/OR ANY APPLICABLE IO ARE SUPPLIED ON AN "AS IS" AND "AS AVAILABLE" BASIS. TO THE FULLEST EXTENT OF THE LAW, PERMISSION DATA MAKES NO WARRANTIES (INCLUDING IMPLIED WARRANTIES OF PURPOSE AND NON-INFRINGEMENT), GUARANTEES, REPRESENTATIONS, EXPRESS, IMPLIED, ORAL OR OTHERWISE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, PERMISSION DATA DOES NOT WARRANT OR GUARANTY COMPENSABLE ACTIONS, CONVERSION RATES AND/OR RESPONSE RATES. THE SERVICES, COMPENSABLE ACTIONS, PIXELS AND/OR TRANSACTION TRACKING CODES MAY CONTAIN BUGS, ERRORS, PROBLEMS OR OTHER LIMITATIONS. OTHER THAN FOR PAYMENT OBLIGATIONS, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, NEITHER PARTY SHALL HAVE ANY LIABILITY, WHATSOEVER, TO THE OTHER PARTY OR ANY THIRD PARTY, FOR ANY OTHER PARTY'S SECURITY METHODS AND PRIVACY PROTECTION PROCEDURES AND EACH PARTY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS AND IMPLIED, THAT ANY OTHER PARTY'S SECURITY METHODS AND PRIVACY PROTECTION PROCEDURES WILL BE UNINTERRUPTED OR ERROR-FREE. PERMISSION DATA HAS NO LIABILITY FOR ADVERTISER'S USE OF, OR INABILITY TO USE, THE SERVICES AND/OR LEADS, WHERE APPLICABLE, AND PERMISSION DATA DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS AND/OR IMPLIED THAT ADVERTISER'S USE OF THE SERVICES AND/OR LEADS WILL BE UNINTERRUPTED OR ERROR-FREE. PERMISSION DATA MAKES NO GUARANTEES, AND ACCEPTS NO RESULTING LIABILITY, FOR FAILURE TO MEET SCHEDULED DELIVERY DATES. OTHER THAN FOR PAYMENT OBLIGATIONS, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, IN NO EVENT SHALL EITHER PARTY BE RESPONSIBLE FOR ANY CONSEQUENTIAL, SPECIAL, PUNITIVE OR OTHER INDIRECT DAMAGES INCLUDING, WITHOUT LIMITATION, LOST REVENUE OR PROFITS, EVEN IF PERMISSION DATA HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. NEITHER PARTY WILL BE LIABLE, OR CONSIDERED IN BREACH OF THE AGREEMENT, ON ACCOUNT OF A DELAY OR FAILURE TO PERFORM UNDER THE AGREEMENT AND/OR ANY IO AS A RESULT OF CAUSES OR CONDITIONS THAT ARE BEYOND PERMISSION DATA'S CONTROL. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, OTHER THAN FOR PAYMENT OBLIGATIONS, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, EACH PARTY'S LIABILITY UNDER ANY CAUSE OF ACTION SHALL BE LIMITED TO THE AMOUNTS PAID TO PERMISSION DATA BY ADVERTISER PURSUANT TO THE AGREEMENT. PERMISSION DATA SHALL NOT BE HELD LIABLE OR RESPONSIBLE FOR ANY ACTIONS OR INACTIONS OF PARTNERS.

**11.  Representation and Warranties.**  Advertiser represents and warrants that: (a) it has the power and authority to enter into and perform its obligations under the Agreement; (b) at all times, the Advertising Material (and its transmission), the applicable products and/or services promoted by such Advertising Material ("Advertiser Products"), any Advertiser website linked to from the Advertising Material and Advertiser itself will comply with all applicable laws, rules, regulations and ordinances (collectively, "Laws") and will not violate any applicable rights of any third party including, but not limited to, infringement or misappropriation of any copyright, patent, trademark, trade secret or other proprietary, property or other intellectual property right; (c) it owns and/or has any and all rights to permit the use of the Advertising Material and, where approved, Permission Data Creative, by Permission Data and its Partners as contemplated by the Agreement; (d) it will not disable "back" browser functionality to prohibit end-users from returning to the website from which the Advertising Material was selected, if applicable; (e) Advertiser has a reasonable basis for any and all claims made within the Advertising Material and possesses appropriate documentation to substantiate such claims; (f) for CPA and Leads Campaigns, the Advertising Material, and/or the landing page from each piece of Advertising Material where an action is completed (for example, Advertiser's website page where an end-user is directed when such end-user clicks on the Advertising Material, fills in a registration form or takes a similar action in connection with the Advertising Material) contains a prominent link to Advertiser's privacy policy, which policy provides, at a minimum, adequate notice, disclosure and choices to end users regarding Advertiser's use, collection and disclosure of their personal information; (g) Advertiser shall fulfill all commitments made in the Advertising Material; (h) no Advertising Material is targeted to end-users under the age of eighteen (18) unless otherwise specified in the IO; and (i) prior to loading any computer program onto an individual's computer including, without limitation, programs commonly used for facilitating coupon printing, but excluding cookies (provided that cookies are disclosed in Advertiser's privacy policy and end-users are instructed on how to disable such cookies), Advertiser shall provide clear and conspicuous notice to, and shall obtain the express consent of, such individual to install such computer program.

**12.  Indemnification.**  Advertiser shall irrevocably defend, indemnify and hold Permission Data, its Partners, and each of their respective employees, officers, directors, members, managers, shareholders, contractors and agents harmless from any and all liability, loss, damage or expense (including, without limitation, reasonable attorneys' fees, costs and expenses) arising out of or related to any allegation, claim or cause of action, involving: (a) Advertiser's breach of the Agreement, any and all applicable IOs, or any representation or warranty contained therein; (b) the Advertising Material, Advertiser Products and/or Advertiser websites; and/or (b) any claim that Permission Data is obligated to pay any taxes in connection with Advertiser's participation hereunder. Permission Data shall irrevocably defend, indemnify and hold Advertiser, its employees, officers, directors, members, managers, shareholders, contractors and agents harmless from any and all liability, loss, damage or expense (including, without limitation, reasonable attorneys' fees, costs and expenses) arising out of or related to any allegation, claim or cause of action, involving Permission Data's breach of the Agreement, any and all applicable IOs, or any representation or warranty contained therein.

**13.  Confidentiality.**  For purposes of the Agreement, "Confidential Information" shall mean all data and information, of a confidential nature or otherwise, disclosed during the term of the Agreement by one party ("Disclosing Party") to the other party ("Receiving Party"), as well as information that the Receiving Party knows or should know that the Disclosing Party regards as confidential including, but not limited to: (a) a party's business plans, strategies, know-how, marketing plans, suppliers, sources of materials, finances, business relationships, personally identifiable end-user information, pricing, technology, employees, trade secrets and other non-public or proprietary information whether written, oral, recorded on tapes or in any other media or format; (c) the material terms of the Agreement and/or any associated IOs; and (d) any information marked or designated by the Disclosing Party as confidential. The Receiving Party agrees to hold all Confidential Information in trust and confidence and, except as may be authorized by the Disclosing Party in writing, shall not use such Confidential Information for any purpose other than as expressly set forth in the Agreement or disclose any Confidential Information to any person, company or entity, except to those of its employees and professional advisers: (i) who need to know such information in order for the Receiving Party to perform its obligation hereunder and (ii) who have entered into a confidentiality agreement with the Receiving Party with terms at least as restrictive as those set forth herein. Confidential Information shall not include any information that the Receiving Party can verify with substantial proof that: (A) is generally available to or known to the public through no wrongful act of the receiving party; (B) was independently developed by the Receiving Party without the use of Confidential Information; or (C) was disclosed to the Receiving Party by a third party legally in possession of such Confidential Information and under no obligation of confidentiality to the Disclosing Party. The Receiving Party agrees that monetary damages for breach of confidentiality may not be adequate and that the disclosing party shall be further entitled to injunctive relief, without the requirement to post bond.

**14.  Non-Circumvention.**  Advertiser recognizes that Permission Data has proprietary relationships with its Partners. Advertiser agrees that it will not, as a principal, agent, employee, employer, consultant, stockholder, investor, director or co-partner of any person, firm, corporation or business entity other than on behalf of Permission Data, or in any individual or representative capacity whatsoever, directly or indirectly, without the express prior written consent of Permission Data: circumvent Permission Data's relationship with such Partners, or otherwise solicit, purchase, contract for, or obtain services similar to the Services performed by Permission Data hereunder from any Partner that is disclosed to Advertiser to have such a relationship with Permission Data, during the term of the Agreement and for

six (6) months following termination or expiration of the Agreement. Notwithstanding the foregoing, to the extent that Advertiser can show that any such Partner already provided such services to Advertiser prior to the date of the first IO executed by the parties, then Advertiser shall not be prohibited from continuing such relationship. Advertiser agrees that monetary damages for its breach, or threatened breach, of this Section 14 will not be adequate and that Permission Data shall be entitled to: (a) injunctive relief (including temporary and preliminary relief) without the requirement to post a bond; (b) liquidated damages from Advertiser in the amount equal to one hundred percent (100%) of the fees paid by Advertiser to the subject Partner for the prior twelve (12) month period; and/or (c) any and all other remedies available to Permission Data at law or in equity.

**15. Miscellaneous.**

(a) **Assignment.** Neither party may assign, transfer or delegate any of its rights or obligations under the Agreement or any IO without the prior written consent of the other party, and any attempts to do so shall be null and void; provided, however, that either party may assign the Agreement, any IO or any portion hereof/thereof, to: (a) an acquirer of all or substantially all of such party's equity, business or assets; (b) a successor in interest whether by merger, reorganization or otherwise; or (c) any entity controlling or under common control with such party.

(b) **Choice of Law/Venue.** The Agreement shall be construed in accordance with and governed by the laws of the State of New York. In the event that any suit, action or other legal proceeding shall be instituted against either party in connection with the Agreement, each hereby submits to the jurisdiction of either the United States District Court for the Southern District of New York or any New York State Court of competent jurisdiction, located in New York County, and further agrees to comply with all the requirements necessary to give such court jurisdiction.

(c) **Modification.** The Agreement and all applicable IO(s) represent the complete and entire expression of the agreement between the parties, and shall supersede any and all other agreements, whether written or oral, between the parties. The Agreement and any applicable IO(s) may be amended only by a written agreement executed by an authorized representative of each party. To the extent that anything in or associated with any IO is in conflict or inconsistent with these Terms and Conditions, the IO shall take precedence.

(d) **Non-Waiver/Severability.** No waiver of any breach of any provision of the Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party. If any provision contained in the Agreement is determined to be invalid, illegal or unenforceable in any respect under any applicable law, then such provision will be severed and replaced with a new provision that most closely reflects the real intention of the parties, and the remaining provisions of the Agreement will remain in full force and effect.

(e) **Relationship of the Parties.** The parties hereto are independent contractors. There is no relationship of partnership, agency, employment, franchise or joint venture between the parties. Neither party has the authority to bind the other, or incur any obligation on its behalf; provided, however, that Permission Data acts as a limited agent of Advertiser for the sole purpose of performing the Services set forth in the IO.

IN WITNESS WHEREOF, Permission Data and Advertiser have caused these Terms and Conditions to be executed by their duly authorized representatives.

| ADVERTISER | PERMISSION DATA, LLC |
|---|---|
| Signature: | Signature: |
| Print Name: Lindsey Agole | Print Name: Chris Ambrosio |
| Title: Manager | Title: CEO |
| Date: 2/10/14 | Date: 2/11/14 |



**permission data**

451 Park Avenue South, 3rd Floor
New York, NY 10016
Fax: 646-417-5405

| | Date: | 2-10-2014 |
|---|---|---|
| | PD IO # | JB_1013 |

| PD Contact: | James Boruff | Advertiser: | Newsmax |
|---|---|---|---|
| Phone: | 212-381-0135 | Campaign: | SimpleHeartTest |
| Fax: | 646-417-5405 | Address: | 560 Village Blvd, Suite 120 |
| Email: | jboruff@permissiondata.com | City, State, Zip: | West Palm Beach, FL 33409 |
| | | Contact: | Lindsey Relic Sprute |
| | | Phone: | 561-686-1165 x1258 |
| | | Fax: | 561-686-8640 |
| | | Email: | lindseyr@newsmax.com |
| Advertiser Billing Contact: | Lindsey Relic Sprute | Technical Contact: | Lindsey Relic Sprute |
| Phone: | 561-686-1165 x 1258 | Phone: | 561-686-8640 |
| Email: | lindseyr@newsmax.com | Email: | lindseyr@newsmax.com |

## Campaign Details

| Flight Dates: | Start: 2/10/2014          End: 6/30/2014 |
|---|---|
| Product: | ValueSavings Network Leads (Banners driving to SimpleHeartTestLanding Page) |
| # of Leads: | TBD (2,500 leads per day until client raises cap via email notice) |
| Rate: | $1.50 |
| Total Cost: | TBD |
| Special Instructions: | Permission Data will use banners to drive users to http://www.simpleheartest.com/heartsurvey.aspx/? <br><br>   o First page submit.  Pixel placed on confirmation page that follows. <br>   o Billed off of Newsmax's reporting.  Newsmax will only pay for new to file leads.  Both parties will continue to monitor each other's systems throughout campaign to make sure that discrepancy is not greater than 20%. <br><br> • Payment Terms: Net Thirty (30) from end of each month in which services were performed. <br>   o Payment Terms are contingent on Permission Data's approval of Advertiser's Credit. |

This Insertion Order is subject to and Advertiser is bound to Permission Data's Terms and Conditions, which are hereby incorporated and made a part of this Insertion Order. The signatory of this Insertion Order represents that he/she has read, understands, and agrees to the terms of such Terms and Conditions under this Insertion Order.

| Newsmax Signature: | | Permission Data Signature: | |
|---|---|---|---|
| Print Name: | Lindsey Sprute | Print Name: | Kris Ambrosio |
| Title: | Manager | Title: | CRO |
| Date: | 2-10-14 | Date: | 2/11/14 |



permission data

| | |
|---|---|
| Date: | 4-8-2014 |
| PD IO # | JB_1020 |

451 Park Avenue South, 3rd Floor
New York, NY 10016
Fax: 646-417-5405

| PD Contact: | James Boruff | Advertiser: | Newsmax |
|---|---|---|---|
| Phone: | 212-381-0135 | Campaign: | Choice for GOP |
| Fax: | 646-417-5405 | Address: | 560 Village Blvd, Suite 120 |
| Email: | jboruff@permissiondata.com | City, State, Zip: | West Palm Beach, FL 33409 |
| | | Contact: | Lindsey Relic Sprute |
| | | Phone: | 561-686-1165 x1258 |
| | | Fax: | 561-686-8640 |
| | | Email: | lindsayr@newsmax.com |
| Advertiser Billing Contact: | Lindsey Relic Sprute | Technical Contact: | Lindsey Relic Sprute |
| Phone: | 561-686-1165 x 1258 | Phone: | 561-686-8640 |
| Email: | lindsayr@newsmax.com | Email: | lindsayr@newsmax.com |

## Campaign Details

| | |
|---|---|
| Flight Dates: | Start:  4/8/2014         End: TBD |
| Product: | ValueSavings Network Leads (Banners and Text Links driving to Choice for GOP Landing Page) |
| # of Leads: | TBD (2,500 leads per day until client raises cap via email notice) |
| Rate: | $1.25 |
| Total Cost: | TBD |
| Special Instructions: | Permission Data will use banners and text links to drive users to http://www.newsmax.com/surveys/GOP2016/Who-Is-Your-Choice-for-the-GOP-s-2016-Nominee-/id/112/kw/default/<br><br>○ First page submit.  Pixel placed on confirmation page that follows.<br>○ Billed off of Newsmax's reporting.  Newsmax will only pay for new to file leads.  Both parties will continue to monitor each other's systems throughout campaign to make sure that discrepancy is not greater than 20%.<br><br>• Payment Terms: Net Thirty (30) from end of each month in which services were performed.<br>○ Payment Terms are contingent on Permission Data's approval of Advertiser's Credit. |

This Insertion Order is subject to and Advertiser is bound to Permission Data's Terms and Conditions, which are hereby incorporated and made a part of this Insertion Order.  The signatory of this Insertion Order represents that he/she has read, understands, and agrees to the terms of such Terms and Conditions under this Insertion Order.

| Newsmax Signature: | | Permission Data Signature: | |
|---|---|---|---|
| Print Name: | Lindsey Sprute | Print Name: | Chris AMbrosio |
| Title: | Manager | Title: | CRO |
| Date: | 3/8/18 | Date: | 4/11/14 |



permission
data

451 Park Avenue South, 3rd Floor
New York, NY 10016
Fax: 646-417-5405

| | |
|---|---|
| Date: | 4-18-2014 |
| PO IO # | JB_1021 |

| PO Contact: | James Boruff | Advertiser: | Newsmax |
|---|---|---|---|
| Phone: | 212-381-0135 | Campaign: | Disapprove Obama, hurting economy |
| Fax: | 646-417-5405 | Address: | 360 Village Blvd, Suite 120 |
| Email: | jboruff@permissiondata.com | City, State, Zip: | West Palm Beach, FL 33409 |
| | | Contact: | Matt Strek |
| | | Phone: | 561-686-1165 |
| | | Fax: | 561-686-8640 |
| | | Email: | matts@newsmax.com |
| Advertiser Billing Contact: | Matt Strek | Technical Contact: | Matt Strek |
| Phone: | 561-686-1165 | Phone: | 561-686-8640 |
| Email: | matts@newsmax.com | Email: | matts@newsmax.com |

## Campaign Details

| | |
|---|---|
| Flight Dates: | Start:  4/18/2014          End: TBD |
| Product: | ValueSavings Network Leads (Banners and Text Links driving to Is Obama Hurting the Economy Landing Page) |
| # of Leads: | TBD (2,000 leads per day until client raises cap via email notice) |
| Rate: | $1.50 |
| Total Cost: | TBD |
| Special Instructions: | Permission Data will use banners and text links to drive users to http://www.moneynews.com/surveys/ObamaEconomy/Is-Obama-Hurting-the-Economy-/id/115/kw/default/?dkt_nbr=rehohlat<br><br>○ First page submit.  Pixel placed on confirmation page that follows.<br>○ Billed off of Newsmax's reporting.  Newsmax will only pay for new to file leads.  Both parties will continue to monitor each other's systems throughout campaign to make sure that discrepancy is not greater than 20%.<br><br>• Payment Terms: Net Thirty (30) from end of each month in which services were performed.<br>  ○ Payment Terms are contingent on Permission Data's approval of Advertiser's Credit. |

This Insertion Order is subject to and Advertiser is bound to Permission Data's Terms and Conditions, which are hereby incorporated and made a part of this Insertion Order. The signatory of this Insertion Order represents that he/site has read, understands, and agrees to the terms of such Terms and Conditions under this Insertion Order.

| Newsmax Signature: | | Permission Data Signature: | |
|---|---|---|---|
| Print Name: | Matthew Strek | Print Name: | Chris Ambrosio |
| Title: | Financial Campaign Manager | Title: | CEO |
| Date: | 4-18-14 | Date: | 4/18/14 |



**permission
data**

451 Park Avenue South, 3rd Floor
New York, NY 10016
Fax: 646-417-5405

| Date: | 4-18-2014 |
|---|---|
| PD IO # | JB_1022 |

| PD Contact: | James Boruff | Advertiser: | Newsmax |
|---|---|---|---|
| Phone: | 212-381-0135 | Campaign: | eBook Absolute Profits |
| Fax: | 646-417-5405 | Address: | 560 Village Blvd, Suite 120 |
| Email: | jboruff@permissiondata.com | City, State, Zip: | West Palm Beach, FL 33409 |
| | | Contact: | Matt Streit |
| | | Phone: | 561-686-1165 |
| | | Fax: | 561-686-8640 |
| | | Email: | matts@newsmax.com |
| Advertiser Billing Contact: | Matt Streit | Technical Contact: | Matt Streit |
| Phone: | 561-686-1165 | Phone: | 561-686-8640 |
| Email: | matts@newsmax.com | Email: | matts@newsmax.com |

## Campaign Details

| Flight Dates: | Start: 4/18/2014          End: TBD |
|---|---|
| Product: | ValueSavings Network Leads (Banners and Text Links driving to eBook Absolute Profits Landing Page) |
| # of Leads: | TBD (500 leads per day until client raises cap via email notice) |
| Rate: | $1.75 |
| Total Cost: | TBD |
| Special Instructions: | Permission Data will use banners and text links to drive users to https://w3.newsmax.com/LP/Finance/ABS/Free-Book <br><br> o   First page submit. Pixel placed on confirmation page/Congratulations! You have secured a free copy of my e-book page that follows. <br> o   Billed off of Newsmax's reporting. Newsmax will only pay for new to file leads. Both parties will continue to monitor each other's systems throughout campaign to make sure that discrepancy is not greater than 20%. <br><br> •   Payment Terms. Net Thirty (30) from end of each month in which services were performed. <br> o   Payment Terms are contingent on Permission Data's approval of Advertiser's Credit. |

This Insertion Order is subject to and Advertiser is bound to Permission Data's Terms and Conditions, which are hereby incorporated and made a part of this Insertion Order. The signatory of this Insertion Order represents that he/she has read, understands, and agrees to the terms of such Terms and Conditions under this Insertion Order.

| Newsmax Signature: | | Permission Data Signature: | |
|---|---|---|---|
| Print Name: | Matt Streit | Print Name: | Chris Jusaroskio |
| Title: | Financial Campaign Manager | Title: | CEO |
| Date: | 4-18-14 | Date: | 4/18/14 |

 **permission data**

451 Park Avenue South, 3rd Floor
New York, NY 10016
Fax: 646-417-5405

| | |
|---|---|
| **Date:** | 5-16-2014 |
| **PD IO #** | JB_1025 |

| PD Contact: | James Boruff | Advertiser: | Newsmax |
|---|---|---|---|
| Phone: | 212-381-0135 | Campaign: | Do you support the President? |
| Fax: | 646-417-5405 | Address: | 560 Village Blvd, Suite 120 |
| Email: | jboruff@permissiondata.com | City, State, Zip: | West Palm Beach, FL 33406 |
| | | Contact: | Lindsay Reliz |
| | | Phone: | 561-686-1165 |
| | | Fax: | 561-686-8640 |
| | | Email: | lindsayr@newsmax.com |
| Advertiser Billing Contact: | Lindsay Reliz | Technical Contact: | Lindsay Reliz |
| Phone: | 561-686-1165 | Phone: | 561-686-8640 |
| Email: | lindsayr@newsmax.com | Email: | lindsayr@newsmax.com |

## Campaign Details

| Flight Dates: | Start:  5/16/2014 | End: TBD |
|---|---|---|
| Product: | ValueSavings Network Leads (Banners and Text Links driving to Do you support the President? Landing Page) | |
| # of Leads: | TBD (15,000 leads per day until client raises cap via email notice) | |
| Rate: | $1.50 | |
| Total Cost: | TBD | |
| Special Instructions: | Permission Data will use banners and text links to drive users to http://www.newsmax.com/surveys/RateObama/Rate-Obama-on-His-Job-Performance/id/97/kw/default/<br><br>o  First page submit.  Pixel placed on confirmation page that follows.<br>o  Billed off of Newsmax's reporting.  Newsmax will only pay for new to file leads.  Both parties will continue to monitor each other's systems throughout campaign to make sure that discrepancy is not greater than 20%.<br><br>• Payment Terms: Net Thirty (30) from end of each month in which services were performed.<br>o  Payment Terms are contingent on Permission Data's approval of Advertiser's Credit. | |

This Insertion Order is subject to and Advertiser is bound to Permission Data's Terms and Conditions, which are hereby incorporated and made a part of this Insertion Order.  The signatory of this Insertion Order represents that he/she has read, understands, and agrees to the terms of such Terms and Conditions under this Insertion Order.

| Newsmax Signature: | | Permission Data Signature: | |
|---|---|---|---|
| Print Name: | UNGER LISUTC | Print Name: | Chris |
| Title: | MARKETER | Title: | CEO |
| Date: | 5/16/14 | Date: | 5/16/14 |

Permission Data, LLC vs.
Newsmax Media, Inc.

# Exhibit 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PERMISSION DATA, LLC,

                              Plaintiff,

            -against-

NEWSMAX MEDIA, INC.,

                              Defendant.

Index No. _157622/2014_

Date Purchased and Filed
_August 4, 2014_
SUMMONS

Plaintiff designates New
York County as the place
of trial. The basis of venue
is plaintiff resides in New
York County

To the above-named defendant:

YOU ARE HEREBY SUMMONED to answer the complaint in this action

and to serve a copy of your answer upon the plaintiff's attorneys within twenty

(20) days after the service of this summons exclusive of the day of service (or

within 30 days after the service is complete if this summons is not personally

delivered to you within the State of New York); and in the case of your failure to

appear or answer, judgment will be taken against you by default for the relief

demanded in the complaint.

Dated:  New York, New York
        August 4, 2014

                              GREENBERG FREEMAN LLP


                              By:  s/ Sanford H. Greenberg
                                   Sanford H. Greenberg
                                   110 East 59th Street
                                   22nd Floor
                                   New York, New York 10022
                                   (212) 838-9738

                                   Attorneys for Plaintiff
                                   Permission Data, LLC

1

To:     Newsmax Media, Inc.
        560 Village Boulevard
        Suite 120
        West Palm Beach, Florida 33409

*nCR4264*
*8/6/2014*
*1035A*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** NEW YORK

-----------------------------------------------------------------------X

PERMISSION DATA, LLC

                                                Plaintiff/Petitioner,

              - against -

NEWSMAX MEDIA, INC.

                                                Defendant/Respondent.

-----------------------------------------------------------------------X

Index No. 157622/2014

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

        PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts.  This notice is being served as required by Subdivision (b) (3) of that Section.

        The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

        Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: August 4, 2014

_____ (Signature)

| Sanford H. Greenberg | (Name) |
| Greenberg Freeman LLP | (Firm Name) |

110 East 59th Street, 22nd Floor   (Address)
New York, New York 10022

_____

212 838 9738                        (Phone)

sgreenberg@greenbergfreeman.com (E-Mail)

To:   Newsmax Media, Inc.
      560 Village Boulevard
      Suite 120
      West Palm Beach
      33409