# GREENBERG FREEMAN LLP

**Sanford H. Greenberg**
sgreenberg@greenbergfreeman.com

110 East 59th Street
New York, New York 10022
Tel 212.838.9738
Fax 212.838.5032
www.greenbergfreeman.com

August 24, 2015

<u>BY ECF</u>
Honorable Paul A. Engelmayer
United States District Judge
40 Foley Square
New York, New York 10007

Re:   <u>Permission Data, LLC v. Newsmax Media, Inc.</u>; 14-cv-7129 (PAE)

Dear Judge Engelmayer:

We represent plaintiff Permission Data, LLC ("Permission Data"). This letter responds to the August 17, 2015 letter of James G. Sammataro, counsel for defendant Newsmax Media, Inc. ("Newsmax") seeking an informal conference to resolve a discovery dispute regarding depositions.

At the outset of this litigation, your Honor cautioned Mr. Sammataro and me that, in view of the relatively small amount in dispute, there is a risk that discovery may get out of control. Unfortunately, discovery is out of control.

This action began as a simple collection action in State Court arising out of Newsmax's failure to pay outstanding invoices in the amount of $274,401. Newsmax responded by removing the action to Federal Court and alleging, among other things, that Permission Data fraudulently created a bot and used the bot to defraud Newsmax. Newsmax has served 153 document demands, 25 interrogatories, at least 11 subpoenas, 57 requests for admissions, deposed 3 non-parties (in California and Wisconsin), deposed Permission Data's corporate representative (on 61 topics enumerated in its Fed. R. Civ. P. 30(b)(6) notice), deposed Permission Data's account executive assigned to the Newsmax account and is deposing Permission Data's former head of sales on September 1, 2015. Tens of thousands of pages of documents have been exchanged by the parties[1]. After nearly one year of discovery, there is no evidence that Permission Data created a bot.

---

[1] Permission Data has necessarily responded to Newsmax's overly aggressive discovery tactics by serving numerous discovery demands on Newsmax.

In addition to Newsmax's formal allegation of fraud, Newsmax has persisted in making informal baseless allegations of fraud and other misconduct throughout this litigation – resulting in further expense and burden.  For example:

▪ Newsmax accused Permission Data of fraudulently altering documents that were produced in discovery.  To resolve the allegation, Permission Data hosted a webinar during which Newsmax was permitted to watch a third-party extract the data in question directly from the third-party's platform and provide the data directly to Newsmax.  The result:  Permission Data did not alter the data.

▪ Newsmax accused Permission Data of improperly capturing Newmax's email addresses during the Simple Heart Test campaign.  The email addresses were recorded at the end of a long string of obscure data located in the Conversion Referrer column of a report generated by Cake, the third-party platform used by Permission Data to track campaigns.  The CTO of Cake subsequently testified at his deposition that Newsmax – not Permission Data – was responsible for Newsmax's email addresses being captured by Cake.

▪ Newsmax's counsel accused me of intentionally misrepresenting to the Court that Permission Data did not have access to Newsmax's email addresses. Upon discovering that Cake captured some of Newsmax's email addresses – which neither I nor Permission Data knew about until July 21, 2015 -- I immediately wrote to your Honor and corrected my prior misstatements.  Mr. Sammataro's reckless assertion that my prior misstatements were intentional has absolutely no factual support.

With this background, I address Newsmax's request to depose Permission Data's president, Eric O'Neill, and Permission Data's Marketing Coordinator, Vivian Chu.

**Eric O'Neill**.  Newsmax has already deposed Permission Data's corporate representative on 61 enumerated topics, and apex depositions are disfavored in this Circuit unless the witness has unique, non-cumulative knowledge of relevant facts. Moreover, the party seeking discovery from an apex witness has the initial burden of demonstrating relevance.  Alliance Industries, Inc. v. Longyear Holding, Inc., 2010 U. S. Dist. LEXIS 119973 (W.D.N.Y. March 19, 2010) (Scott, Mag. J.). [2]

Newsmax's arguments regarding the relevance of Mr. O'Neill's knowledge are overstated.[3]  Indeed, Mr. O'Neill's decision to initiate the collection action, his attempt to salvage Permission Data's relationship with Newsmax and his limited communications with publishers are of marginal relevance and all occurred after the events which form the bases of Permission Data's claims and Newmax's counterclaims.  Moreover, the

---

[2] Mr. Sammataro's statement that Newsmax has not objected to Permission Data's request to depose Newsmax's President, Christopher Ruddy,  is disingenuous.  Mr. Sammataro did not respond to my request for available dates for Mr. Ruddy's deposition.  Now that Mr. Sammataro has made clear that Newsmax does not object to the deposition of Mr. Ruddy, I again request that he provide available dates.
[3] Contrary to Mr. Sammataro's assertion, Permission Data does not seek to shield the testimony of a "pivitol witness."  Permission Data has not determined who it will call as trial witnesses.  Moreover, the importance of Mr. O'Neill's testimony to Newsmax is belied by the fact that they waited until the end of discovery to ask for his deposition.

fact that Mr. O'Neill verified Permission Data's answers to interrogatories is similarly of marginal relevance in view of the fact that Newsmax deposed Permission Data's corporate representative. Mr. O'Neill's participation in internal sale's meetings is not relevant to any of the claims or defenses in this action and Newsmax already deposed Permission Data's account executive, and is scheduled to depose Permission Data's former head of sales on September 1, 2015. Mr. Sammataro's reference to the deposition testimony of D. Steidl, Exclusive CPA's president, is out of context. Mr. Steidl made clear at his deposition that he has dealt with Mr. O'Neill "[o]nce or twice ever, maybe three times" and he has spoken (as opposed to emailed) with Mr. O'Neill, at most, once and that conversation was after the commencement of this litigation. Steidl Dep., page. 24, lines 10- 12; page 21, lines 22 – 24; page 23, lines 2 – 8.

The fact that Mr. O'Neill attended some of the depositions with me is irrelevant. Permission Data is a small company without significant resources to engage in litigation. As a matter of budget, Mr. O'Neill has necessarily assisted me in the defense of Newmax's frivolous claims.[4]

**<u>Vivian Chu</u>**: Ms. Chu is a low level employee who supports the Media Team. Ms. Chu handles the campaign set-up process, manages the technical aspects of loading campaigns into Cake and reports monthly numbers internally and to publishers for invoicing. The topics on which Newsmax seeks to depose Ms. Chu were substantially covered among the 61 enumerated topics contained in Newsmax's 30(b)(6) notice – specifically, the set-up of the campaigns, which includes loading and testing. Moreover, these topics are of marginal to no relevance. Indeed, the specific purpose identified by Newsmax for deposing Ms. Chu is to test the veracity of Permission Data's assertion that it did not cause Newsmax's email addresses to be captured by Cake. Again, Newsmax creates a sideshow involving allegations of misconduct – unrelated to Newsmax's counterclaims. Not only is this issue of marginal relevance, it was fully addressed and resolved at the deposition of Cake's CTO who testified that it was Newsmax, not Permission Data, who caused the email addresses to be captured by Cake.

Discovery in this action has been excessive and disproportional to the amount in dispute. Permission Data respectfully requests that the Court deny Newsmax's request to depose its President and its Marketing Coordinator.

Respectfully submitted,

/s/ Sanford H. Greenberg

Sanford H. Greenberg

cc: James G. Sammataro, Esq. (by ECF)

---

[4] Mr. Sammataro's assertion that Mr. O'Neill has conferred with Permission Data's witnesses during breaks is yet another attempt by Mr. Sammataro to imply improper conduct. Mr. O'Neill did not engage in any improper conduct during the depositions.